# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-cr-30056 |
| ) | |
| DAVID L. SIMPSON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

    This matter comes before the Court for a Report and Recommendation on Defendant David L. Simpson's Motion to Suppress Traffic Stop (d/e 22).  On November 6, 2013, the Court held an evidentiary hearing on the Motion.  The Government appeared by Assistant United States Attorney Timothy Bass.  The Defendant appeared in person and by his attorney, Assistant Federal Public Defender John Taylor.  After careful consideration of the submissions of the parties, the evidence adduced at the hearing, the arguments of counsel, and the applicable law, the Court recommends that the Motion should be DENIED.

STATEMENT OF FACTS[1]

The Government presented the testimony of Illinois Attorney General Office Investigator Sean Simpson, who was assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer, and Illinois State Trooper Curtis Walch.[2] The evidence presented established the following:

On June 17, 2013, Investigator Simpson was contacted by Mt. Olive, Illinois, Chief of Police (Chief). The Chief told Investigator Simpson that a confidential source (CS) told the Chief that Defendant Simpson was planning to travel to St. Louis, Missouri, to purchase heroin and return to the Mt. Olive area to distribute the drug. The CS was cooperating to get consideration on a pending drug charge against him. The Chief had used the CS once before.

The CS and the Chief communicated by cellular telephone, both by voice and by text message. The CS told the Chief that he was riding with Defendant Simpson in a van (Van) in the Mt. Olive area. The CS gave the Chief a description of the Van. The CS reported that a woman was driving the Van, Defendant Simpson was sitting in the front passenger seat, and

---

[1] This Report and Recommendation has been prepared without the benefit of a transcript of the hearing.
[2] Trooper Walch did not spell his last name at the hearing. The Court is using the spelling of his last name that appears in the Criminal Complaint and Affidavit (d/e 1) filed in this case.

the CS was in the rear seat. Investigator Simpson later testified that the Van was owned by Defendant Simpson's mother. The Chief had some of his officers follow the Van. The officers were able to confirm the information the CS provided about the occupants of the Van and its route in and around Mt. Olive.

Some of the Mt. Olive officers continued to follow the Van as it travelled south on Interstate 55 (I-55) toward St. Louis. The Mt. Olive police officers lost the Van in the traffic of the metropolitan area. The CS continued to send text messages to the Chief advising him of their location. The CS reported that the Van was stopped at an apartment on 22nd Street in St. Louis, and then went to a Days Inn motel near that location. The CS telephoned the Chief while they were stopped at the Days Inn. He reported that the Defendant had acquired 50 buttons of heroin. Each button was a tenth of a gram. The CS reported that the Defendant and the driver were using some of the heroin. The CS reported that the Defendant would have approximately 37 buttons left. The CS then sent text messages to the Chief giving him their location after they left the Days Inn and headed back to Illinois.

The Mt. Olive police officers who followed the Van to the St. Louis area, stationed themselves at the intersection of I-55 and Interstate 270

(I-270) on the Illinois side of the metropolitan area.  The Chief relayed to them the location information that he received from the CS.  Based on that information, the officers spotted the Van as it approached the intersection eastbound on I-270, and then turned north onto I-55.

Investigator Simpson then called for Illinois State South Central Task Force for assistance.  He asked for Illinois State Police Troopers to monitor I-55 to look out for the Van and make a traffic stop if they observed the Van commit a traffic violation.  Trooper Walch responded.  He went to mile marker 39 on I-55 and pulled into the turnaround between the lanes of traffic.  He parked his vehicle so that he could use his radar device to determine the speed of northbound vehicles.  He observed the Van heading north in a pack of approximately four vehicles.  The four vehicles were all traveling together to pass a slower vehicle.  Using his radar, he determined that all four vehicles, including the Van, were traveling 71 miles per hour.  The speed limit was 65 miles per hour.  Trooper Walch pulled onto I-55 and started to follow the Van.  He reported over his radio that he was going to stop the Van for a traffic violation.  Trooper Walch caught up to the Van shortly after it pulled off I-55 at exit 41, near Stanton, Illinois.  By this time, Investigator Simpson and the Chief were located at Exit 41 and observed the Van exit I-55.  Walch pursued the Van and stopped it about a

mile away from exit 41.  Investigator Simpson followed and observed the stop.  Walch gave the driver a warning and held the Van briefly until other officers arrived, including Investigator Simpson and a Litchfield, Illinois, police officer who worked with a drug sniffing dog.  Walch estimated the officer with the dog arrived somewhere between ten and thirty minutes after the initial stop.[3]

The officer handling the drug sniffing dog conducted an open air sniff with the dog around the vehicle.  The dog alerted on the Van.  The officers then searched the Van and found the heroin in the back seat area.  The officers then arrested the Defendant.  The CS reported that the Defendant handed the heroin to the CS as they were being stopped and told the CS to hide it.

## ANALYSIS

Defendant Simpson challenges the validity of the stop.  An officer can properly stop an automobile if the officer has probable cause to believe that the driver committed a traffic violation.  United States v. Bueno, 703 F.3d 1053, 1059 (7th Cir. 2013); cert. granted and judgment vacated on other grounds sub nom. Gonzalez-Zavala v. United States, __ U.S. __, 133 S.Ct.

---

[3] Investigator Simpson testified that the officer handling the dog arrived within two minutes of the stop. The Court uses Trooper Walch's estimate of the time in order to give Defendant Simpson the benefit of the doubt.

2830 (2013).  The officer's subjective motivation is irrelevant.  United States v. Hernandez-Rivas, 348 F.3d 595, 599 (7th Cir. 2003).  In this case, Trooper Walch had probable cause to believe that the Van was speeding.  He used his radar device to determine that the Van was traveling 71 miles per hour when the speed limit was 65 miles per hour.  The stop was valid.

Beyond the stop, Defendant Simpson fails to establish that he has standing to challenge the validity of the search.  Defendant Simpson must have a reasonable expectation of privacy in the items seized and the area searched to raise a Fourth Amendment challenge.  United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006).  He has the burden of proof on this issue.  Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).  Defendant Simpson must show that he had a subjective expectation of privacy and that the expectation must be one that society is prepared to recognize as objectively reasonable.  United States v. Garcia, 897 F.2d 1413, 1418 (7th Cir. 1990).  A passenger riding in a vehicle which he does not own, or have some other right of possession, does not have a reasonable expectation of privacy in the vehicle.  E.g., United States v. Price, 54 F.3d 342, 345-46 (7th Cir. 1995); Garcia, 897 F.2d at 1418.  The evidence before the Court indicates that Defendant Simpson did not own the vehicle; the Van belonged to his mother.  Defendant Simpson presented no evidence to

establish that his mother authorized him to possess the Van.  Therefore, he failed to establish that he had a reasonable expectation of privacy in the Van.  Defendant Simpson has no standing to challenge the validity of the search.

Moreover, even if Defendant Simpson had a reasonable expectation of privacy in the Van, the search was valid.  An officer conducting a traffic stop may reasonably detain the occupants of a vehicle long enough to conduct the stop.  United States v. Muriel, 418 F.3d 720, 726 (7th Cir.2006).  When the officers have reasonable suspicion that a vehicle may be involved in other criminal activity, the officers may detain the vehicle for additional time in order to conduct a reasonable investigation.  See United States v. Martin, 422 F.3d 597, 602 (7th Cir. 2005).

Law enforcement officials have reasonable suspicion when they have a minimal level of objective justification to believe based on articulable facts that criminal activity may be afoot.  See e.g., United States v. Sokolow, 490 U.S. 1, 7-8 (1989); United States v. Ganser, 314 F.3d 839, 843 (7th Cir. 2003).  A confidential source can provide information that forms the basis for an officer's reasonable suspicion when the information is supported by such factors as the source's past reliability, the basis for the

source's knowledge, and confirmation of parts of the information provided. See United States v. Navarro, 90 F.3d 1245, 1253 (7th Cir. 1996).

In this case, the information from the CS provided reasonable suspicion that the Van was involved in the transportation of heroin. The Chief had worked with the CS once before. The CS had a motive to cooperate because of a pending drug charge against him. The CS provided contemporaneous information of the events based on personal knowledge as he travelled with Defendant Simpson in the Van. The Mt. Olive police officers followed the Van and confirmed the CS's information about the occupants and the route traveled. The officers spotted the Van on the return trip at I-270 and I-55 intersection based, in part, on the CS's text messages. This independent corroboration of the CS's information provided a sufficient basis for a reasonable suspicion that the Van was being used to transport heroin.

Walch detained the Van somewhere between ten and thirty minutes until the drug sniffing dog arrived. A ten minute delay was consistent with time necessary for Officer Walch to conduct the traffic stop. He would need time to run routine checks on the car and the driver and to write the warning. Given the reasonable suspicion, a thirty minute delay would have

been appropriate as part of a reasonable investigation.  See Martin, 422 F.3d at 602.

The open air dog sniff was also proper.  Officers may conduct an open air dog sniff around a vehicle without a specific reason or justification.  The use of a dog in an open area outside of a vehicle does not implicate a legitimate interest in privacy, and so, does not raise a Fourth Amendment concern.  See Illinois v. Caballes, 543 U.S. 405, 409 (2005).  Thus, the dog sniff did not violate Simpson's rights.  Once the dog alerted for the presence of drugs, the officers had a proper basis to search the car for drugs.  Martin, 422 F.3d at 602.  Once the officers found the drugs in the car, they had probable cause to arrest Simpson.  Therefore, the search and arrest were proper even if Defendant Simpson somehow had a reasonable expectation of privacy in the Van.

WHEREFORE Defendant David L. Simpson's Motion to Suppress Traffic Stop (d/e 22) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to file a timely

objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); 28 U.S.C. § 636(b)(1).

ENTER:  November 14, 2013

                                                       *s/ Byron G. Cudmore*
                                     UNITED STATES MAGISTRATE JUDGE