## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-30056** |
| | ) | |
| **DAVID L SIMPSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant David L. Simpson's Renewed Amended Motion for New Trial (d/e 70). Within the motion, Defendant requests oral argument and/or an evidentiary hearing on the motion. Defendant's request for a hearing and Defendant's motion are DENIED because Defendant has not sufficiently alleged facts that, if true, would result in judgment in his favor.

## I.     <u>BACKGROUND</u>

On June 18, 2013, a single-count Complaint was filed in this Court, charging that on or about June 18, 2013, Defendant David L. Simpson knowingly possessed heroin with the intent to distribute

(d/e 1).  On July 10, 2013, a single-count Indictment was filed in this Court, charging the same but amending the date to on or about June 17, 2013 (d/e 7).  On February 20, 2014, following a jury trial, Defendant was found guilty of the offense charged in the Indictment.

At trial, the Government argued the following:

On June 17, 2013, Defendant, along with Jade Winchester and Joseph Burdell, collected scrap aluminum from Defendant's mother's property, just outside Mount Olive, Illinois, and then left the property at around 10:00 a.m. in Defendant's mother's van. Winchester drove, Defendant sat in the passenger's seat, and Burdell sat in the backseat.  They first went to Mullin's Salvage Yard to exchange the scrap metal for cash.  They then met David Zenner at a Dairy Queen in Staunton, Illinois so that Defendant could collect money from Zenner for the purchase of heroin. Defendant, Winchester, and Burdell later made stops at Casey's gas station for fuel and at an intersection in Wilsonville, Illinois so that Defendant could collect money from another friend, "Nicky."  After completing these errands, they proceeded to a St. Louis residence located near 22nd Street and St. Louis Avenue.  At the residence,

Defendant exited the car and met an unknown person at an entryway to the residence and purchased at least 38 "buttons" of heroin.[1]  Defendant placed the buttons of heroin in a white cigarette case with a floral pattern.  Defendant, Winchester, and Burdell then stopped at a Days Inn, where, at least, Defendant and Burdell injected some of the heroin.  They then headed back north to Illinois.  Illinois State Police Trooper Curtis Walch performed a traffic stop on the van after it exited I-55 at the Staunton exit, where Defendant was to meet Zenner to deliver heroin.  A canine unit was called to the scene and gave a positive indication on the van for the presence of drugs.  Upon receiving information from Burdell as to where Defendant hid the drugs, Agent Todd Dowdy removed Defendant's white cigarette case from the van and discovered 38 buttons of heroin inside.  Agents also seized Defendant's and Burdell's cell phones.  Officer Mitchelar discovered Zenner riding away from the scene of the traffic stop on his bicycle.  Zenner told Mitchelar that he was there collecting cans.

The Government presented a substantial amount of evidence to the jury to support the aforementioned series of events.

---

[1] A "button" is a small pill capsule that is filled with heroin in powder form.

First, Burdell and Mount Olive Chief of Police Ryan Dugger both testified that Burdell was working as a confidential informant for the Mount Olive Police Department and the Illinois State Police Drug Task Force Unit.  See Trial Tr. (d/e 48) at 12-14 (Dugger); Trial Tr. (d/e 49) at 169-70 (Burdell).  On the morning of June 17, 2013, Burdell notified Dugger in person that Defendant intended to travel to St. Louis to purchase heroin that day.  See Trial Tr. (d/e 48) at 15; Trial Tr. (d/e 49) at 170.  Burdell then communicated the above series of events to Dugger by text message while the events were happening.  Id. at 172-73.

Second, testimony from Winchester, Burdell, and Zenner substantially corroborated the series of events to the extent that each was involved.  Burdell and Winchester testified consistent with the aforementioned timeline of events and further testified that Defendant collected the money, communicated with the supplier, and purchased the heroin.  See generally Trial Tr. (d/e 48) at 26-68 (Winchester); Trial Tr. (d/e 49) at 162-92 (Burdell).  Zenner testified that he provided Defendant with money for the purchase of heroin. See id. at 200.  However, Zenner did not know whether Burdell or Defendant had called Zenner to arrange the rendezvous at Dairy

Queen and Zenner, who never entered the van, testified that Burdell was driving and Winchester was in the backseat, which is inconsistent with the testimony of the other witnesses.  See id. at 199 ("I believe either [Defendant] or [Burdell] called me up...."); id. at 200 ("I guess [Burdell] was driving...and there was a girl in the back seat.").

Third, the series of events was partially corroborated by the surveillance of Officer Mitchelar of the Mount Olive Police Department.  Mitchelar surveilled the van from his personal automobile.  Id. at 121.  Mitchelar began surveillance on Route 66, which leads directly from Mullin's Salvage Yard to I-55.  Id. at 123.  Mitchelar followed the van to Dairy Queen, then to Casey's, then to the intersection in Wilsonville.  Id. at 123-27.  Mitchelar then lost the van while trying to avoid detection.  Id. at 127-28.  Mitchelar attempted to catch up to the van and then to find the van in St. Louis; however, he failed to do either.  Id. at 128-30.  After driving around St. Louis for 15-20 minutes, Mitchelar drove back north on I-55 and waited at the exit 31 rest area near Hamel.  Id. at 130.  He located the van five minutes later traveling north on I-55 and maintained surveillance through the traffic stop.  Id. at 131-34.

Finally, the series of events and Defendant's participation in the events were corroborated by phone records. Phone records from the cell phone seized from the Defendant established that the phone was used to contact Zenner, Nicky, and a phone number in St. Louis and that the times and durations of the calls were consistent with the Government's timeline of events. See generally id. at 256-281.

The Government also presented: (1) fingerprint evidence showing that Defendant's fingerprint was on cigarettes found in the cigarette case that also contained the heroin; (2) forensic evidence showing that the substance in the "buttons" was, indeed, heroin; and (3) Deputy United States Marshal Carl Hein's testimony that Defendant made a voluntarily and unprovoked statement to Hein admitting that Defendant is a drug dealer, if not admitting his guilt entirely. See id. at 208-223 (fingerprint evidence); id. at 247-256 (forensic evidence); id. at 283 (Hein: The Defendant "stated that, [t]hese guys don't understand how this works in Washington. Things are different now because low-level drug dealers like myself, they don't care about because it costs too much money.").

Jade Winchester additionally testified that: (1) Winchester had abused a variety of drugs, including marijuana, cocaine, methamphetamine, and heroin; (2) Winchester was a heroin addict on June 17, 2013; (3) Winchester had previously been convicted of two felonies, possession of a controlled substance and obtaining a prescription by fraud; and (4) Winchester was on probation on June 17, 2013.  See generally Trial Tr. (d/e 48) at 26-68.

Joseph Burdell additionally testified that: (1) Burdell had abused a variety of drugs, including heroin, morphine, and prescription medications; (2) Burdell was a heroin addict on June 17, 2013; (3) Burdell had previously been convicted of domestic battery, three DUIs, and a hate crime; (4) prior to June 17, 2013, Burdell was cited for DUI and possession of heroin paraphernalia and agreed to cooperate with law enforcement to avoid prosecution of those charges; and (5) Burdell used heroin while he was cooperating with law enforcement.  See generally Trial Tr. (d/e 49) at 162-92.

David Zenner additionally testified that: (1) Zenner had abused heroin and prescription drugs; (2) Zenner was a heroin user on June 17, 2013; (3) Zenner lied to police officers when he was

questioned about his presence near the site of the traffic stop; and

(4) Zenner had previously been convicted of distribution of

morphine and theft.  See generally id. at 192-208.

After the close of the Government's case, Defendant testified

on his own behalf.  The Court admonished Defendant that he had a

right not to testify and asked him if he was giving up that right, to

which Defendant replied, "Yes.  I don't have anything to hide,

ma'am."  Id. at 287.

On direct examination, Defendant testified that he left his

mother's home with Winchester and Burdell on June 17, 2013 to

sell scrap metal for gas money and then attend a court setting in

Macoupin, Illinois at 2:00 p.m.  See id. at 295-97  Defendant

testified that they first went to the salvage yard, then to Fanco to

get sodas, then to Staunton to see Burdell's friend Zenner, then to

the gas station, and finally to the intersection in Wilsonville to talk

to Nicky.  See id. at 300-01.  He testified that he never made it to

court because the van was pulled over.  See id. at 303.  Defendant

further testified that he did not purchase heroin or put heroin in

the cigarette case, although Defendant admitted that he owned the

cigarette case.  See id. at 307-08.  Defendant testified, rather, that

about twenty minutes prior to the traffic stop, he handed the cigarette case, which contained no drugs, to Burdell so that Burdell could get a cigarette and he did not see the cigarette case again until agents removed it from the van.  See id.  He then called his mother to ask her to inform his attorney that he was running late for his court appearance and, shortly thereafter, police pulled over the van.  See id. at 303.

On cross-examination, Defendant testified that, although he did not call Zenner, he did collect $30 from Zenner, $20 that Zenner owed him and an additional $10 that Zenner gave him for gas.  See id. at 332.  Defendant further testified that, after the meet-up with Nicky, Burdell gave directions to the next location, which ended up being somewhere off of St. Louis Avenue in St. Louis.  See id. at 332-34.  He testified that they pulled into a parking lot where an unknown person handed "stuff" to Burdell. Id. at 336.  Defendant testified that they stopped at the Days Inn and Burdell gave Defendant and Winchester buttons of heroin to inject.  See id. at 336-37.  Defendant also testified that the phone seized from his possession did not belong to him.  See id. at 323-28. Defendant testified that Burdell owned the phone and that the

phone was passed around to whoever needed a phone to use.  See
id.  Defendant further testified that, on that day, he, Winchester,
and Burdell all used the phone.  See id.  Defendant testified that he
used the phone to call Nicky, his mother, and two individuals
named "Jimmy" and Zach Hoffstot; however, Defendant testified
that he did not make any of the other calls, including those to
Zenner, and that he did not know the St. Louis phone number.  See
id.

     To rebut Defendant's testimony, the Government presented
evidence that (1) at times on June 17, 2013, both Burdell's phone
and the phone seized from Defendant were used at the same time;
(2) Burdell's phone number was a contact in the phone seized from
Defendant under "Joe" (Burdell's first name); (3) a number of calls
were placed to Burdell from the phone seized from Defendant,
including on June 17, 2013; and (4) no call to Defendant's mother
was made from the phone.  See id. at 344.

     Defendant now argues that he should be awarded a new trial
because his counsel was ineffective in four ways: (1) by not
"meaningfully" cross-examining Winchester, Burdell, and Zenner;
(2) by failing to interview or call three defense witnesses; (3) by

Page 10 of 26

advising Defendant to reject a 46-month plea deal based on an inaccurate assessment of the strength of the Government's case; and (4) by calling Defendant as a witness without previously discussing Defendant's testimony or advising Defendant that he would be subject to cross-examination. On June 15, 2016, the Court ordered the Government to respond as to whether it ever offered Defendant an agreement including a 46-month sentence. The Government filed a response stating that it never made any formal plea offer in this case (d/e 78).

## II.    LEGAL STANDARD

"The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court." United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989). A defendant can seek an "evidentiary hearing" on his ineffective assistance of counsel claim whether he raises the claim at the post-conviction stage or "by way of a motion for new trial." United States v. Taglia, 922 F.2d 413, 419 (7th Cir. 1991); see also United States v. Malone, 484 F.3d 916, 919 (7th Cir. 2007) ("Typically, an ineffective assistance claim raised in a motion for new trial is addressed by holding an evidentiary hearing...."). However, a hearing is not "mandatory in

Page 11 of 26

all cases" in either context.  Id. at 419.  Rather, the court may deny the defendant an evidentiary hearing if "the motions, files, and records of the case conclusively show" that the defendant is not entitled to relief.  See  Olson v. United States, 989 F.2d 229, 233 (7th Cir. 1993) (applying the same test for granting an evidentiary hearing used in habeas cases to determine whether the defendant was entitled to an evidentiary hearing on his motion for new trial); see also Cooper v. United States, 378 F.3d 638, 342 (7th Cir. 2004) (stating the test in habeas cases, *i.e.*, the defendant is not entitled to a hearing if "the motions, files, and records of the case conclusively show" that the defendant is not entitled to relief.).  In order to receive an evidentiary hearing on his motion, a defendant must "allege[ ] facts that, if true, would lead to a judgment in his favor."  Enoch v. Gramley, 70 F.3d 1490, 1498 (7th Cir. 1995).

## III.  **ANALYSIS**

To establish that counsel was ineffective, a defendant must show both: (1) that his trial attorney's performance "fell below an objective standard of reasonableness;" and (2) that "but for counsel's unprofessional errors the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688

Page 12 of 26

(1984).  Therefore, in the present case, Defendant is only entitled to a hearing on his claim if he has "allege[d] facts that, if true," establish both ineffectiveness and prejudice under Strickland. Enoch, 70 F.3d at 1498.  Based on a review of the motion and the record, the Court finds that Defendant is not entitled to an evidentiary hearing because he has not alleged sufficient facts to show that he suffered prejudice from his counsel's alleged trial errors and because he has not provided a sufficient factual basis to support the premise that he was offered a plea deal.  See id. at 697 ("If it is easier to dispose of [the] claim on the ground of lack of sufficient prejudice,…that course should be followed.").

### A. Defendant Is Not Entitled to an Evidentiary Hearing on His Three Claims of Ineffectiveness at Trial.

Three of Defendant's claims—failure to cross-examine, failure to interview/call witnesses, and failure to inform Defendant about cross-examination and adequately prepare Defendant to testify—are based on alleged ineffectiveness of his counsel at trial.  In order to satisfy the prejudice prong of Strickland on these claims, Defendant must allege facts that show that, if the errors had not been committed, "there is a reasonable possibility that the outcome of the

trial would have been different." <u>Malone v. Walls</u>, 538 F.3d 744,
762 (7th Cir. 2008).  First, Defendant does not make any specific
allegations about how the absence of his counsel's alleged errors
would have changed the outcome of his trial.  Second, the trial
record shows that there is no reasonable possibility that the
outcome of Defendant's trial would have been different had
Defendant's counsel's alleged errors not occured.  Because
Defendant does not even allege facts that, if true, support a finding
that he was prejudiced by counsel's alleged errors, the Court finds
that Defendant is not entitled to a hearing on his claims of
ineffective assistance of counsel at trial.

     1. *Defendant does not allege facts that support a finding that he
       was prejudiced by any failure of counsel to further impeach
       Winchester, Burdell, or Zenner.*

     Defendant first argues that counsel was ineffective because
counsel did not adequately cross-examine Winchester, Burdell, or
Zenner.  Defendant argues that counsel should have impeached the
credibility of these witnesses by: (1) more thoroughly examining the
witnesses' criminal histories; (2) addressing the witnesses' drug use
as a way to undermine their credibility rather than "as a
sympathetic behavior;" (3) further questioning the witnesses on

benefits they may have been receiving in return for their testimony; (4) highlighting the inconsistency in Zenner's testimony regarding the seating arrangement in the van; and (5) emphasizing that Zenner lied to police about why he was in the area of the traffic stop.  However, Defendant does not allege facts that support a claim for prejudice because the record does not show that there is a reasonable probability that correction of these alleged errors would have changed the result of the Defendant's trial.

First, Defendant was not prejudiced because the issues regarding these witnesses' credibility were sufficiently examined based on the testimony presented at trial.  See United States v. Booker, 981 F.2d 289, 295 (7th Cir. 1992) (holding that the defendant's attorneys "inability to elicit certain testimony…as additional impeachment" did not affect the outcome of the trial when the witnesses' character was already in question); United States v. Balzano, 916 F.2d 1273, 1295 (7th Cir. 1990) (holding that the defendant's attorney's failure to explore an additional conviction for impeachment purposes did not result in prejudice).  At trial, the Government, during direct examination, made the jury aware of all of the possible issues with Winchester's, Burdell's, and

Zenner's credibility noted in Defendant's motion.  See Trial Tr. (d/e
48) at 29-38, 57-58 (Winchester's drug use); id. at 34-38
(Winchester's criminal history); id. at 59-60 (asking Winchester if
she was promised anything for her testimony to which she
answered, "No."); Trial Tr. (d/e 49) at 164-167 (Burdell's drug use);
id. at 465 (Burdell's use of heroin while providing information for
police on June 17, 2013); id. at 165 (Burdell's criminal history); id.
at 169-170, 176-78 (benefits received by Burdell for cooperating
and testifying); id. at 196-198 (Zenner's drug use); id. at 194-96
(Zenner's criminal history); id. at 204 (asking Zenner if he was
promised anything for his testimony to which he answered "No.");
id. at 200 (Zenner testifying that Burdell was the driver and "a girl"
was in the backseat; id. at 203 (Zenner admitting he lied to police).
Further, Defendant's counsel revisited many of the credibility issues
in cross-examination.  See Trial Tr. (d/e 48) at 62-65 (Winchester's
drug use); id. at 66 (Winchester's motivation to lie); Trial Tr. (d/e
49) at 178-183, 189-90 (Burdell's drug use); id. at 183 (Burdell's
use of heroin while providing information for police on June 17,
2013); id. at 186-88 (Burdell's criminal history); id. at 185-87
(benefits received by Burdell for his testimony).

Second, Defendant was not prejudiced because any credibility concerns about the three witnesses were mitigated by corroborating evidence. The testimony of Winchester, Burdell, and Zenner was corroborated by: (1) the consistency in the testimony of the three witnesses (aside from Zenner's description of the seating arrangement in the van); (2) the phone record evidence; (3) the testimony of Officer Mitchelar, the officer who was surveilling the van; and (4) Defendant's admission to Deputy Marshall Hein that Defendant is a drug dealer.

Finally, Defendant was not prejudiced because Defendant did not provide the jury with more credible evidence rebutting the testimony of Winchester, Burdell, and Zenner. The only alternative scenario Defendant presented was that described in his own testimony, which was, at least, as questionable as the testimony of Winchester, Burdell, and Zenner. Defendant was also a drug addict with an extensive criminal history and a strong motive to lie. Further, Defendant's alternative narrative of the events of June 17, 2013 is contradicted by the phone records and Officer Mitchelar's surveillance.

    *2. Defendant does not allege facts that support a finding that he
was prejudiced by any error of counsel in failing to interview or
present the testimony of Donna Simpson, Jacqueline Lintzenich,
or Zachary Hoffstot.*

Defendant next argues that counsel was ineffective in not
interviewing and calling potential witnesses Donna Simpson,
Jacqueline Lintzenich, and Zachary Hoffstot.  However, Defendant
does not allege facts that, along with the record, establish that there
is a reasonable probability that the outcome of the trial would have
been different had the Defendant's counsel interviewed and called
the three additional witnesses because the potential testimony of
these witnesses would have had negligible probative value or been
outright inadmissible.

Based on Defendant's motion and the letters written by the
three potential witnesses, the testimony of these witnesses would
have included: (1) testimony from Donna Simpson that Defendant
did not have money for purchasing drugs on June 17, 2013; (2)
testimony from Donna Simpson that Burdell told her that
Defendant had "taken the [ ]rap" for Burdell and Winchester; and
(3) testimony from Lintzenich and Hoffstot that when they had

previously joined Burdell and Defendant on trips to St. Louis, only Burdell and not Defendant had purchased heroin.

Any testimony from Donna Simpson that Defendant did not have money on June 17, 2013 would be irrelevant based on the other evidence presented at trial. Evidence is relevant if the evidence "has any tendency to make a fact more or less probable" and that "fact is of consequence in determining the action." F.R.E. 401. Although evidence showing that Defendant did not have money to purchase heroin might initially have been relevant as to whether the Defendant purchased heroin, any relevance of such evidence would have been undermined by the Government's evidence establishing that Defendant obtained money prior to making the heroin purchase. Witness testimony at trial established that Defendant, Winchester, and Burdell began the day by selling scrap metal at Mullin's Salvage Yard to obtain money. Further testimony established that Defendant collected money from, at least, Zenner and Nicky prior to traveling to St. Louis to purchase heroin. In fact, Defendant himself testified that he collected aluminum from his property and took it to Mullin's Salavage Yard to trade for cash and that he collected $30 from Zenner. In light of

such evidence, Donna Simpson's testimony regarding what money

Defendant had on June 17, 2013, prior to his efforts to obtain

money, would not have been relevant or, at best, would have been

of negligible probative value.  Therefore, there is no reasonable

possibility that such evidence would have changed the outcome of

Defendant's trial.

Any testimony from Donna Simpson that Burdell told her that

Defendant had "taken the [ ]rap" for Burdell and Winchester would

have been inadmissible as substantive evidence because such

evidence is hearsay.  See F.R.E. 801(c) (any statement made outside

of court presented to prove the "truth of the matter asserted" in the

statement is hearsay).  Further, no hearsay exceptions apply to the

alleged testimony.  Defendant could have presented this evidence

under F.R.E. 613, but only for the limited purpose of attempting to

prove that Burdell had made a prior statement that was

inconsistent with the testimony he gave in court (that Defendant

organized and executed the drug purchase and distributions).  See

F.R.E. 613 (a defendant can present witness testimony of a

declarant's prior inconsistent statement provided the defendant

gives the declarant an opportunity to "explain or deny" the

statement and gives the opposing party an opportunity to cross-examine the witness regarding the statement and any potential issues with the witness' credibility); see also F.R.E. 801(d)(1)(A) (a witness' prior inconsistent, out-of-court statement is only "not hearsay" if the statement was given as prior testimony at a court proceeding or deposition, "under penalty of perjury," and the witness was "subject to cross-examination" at that time). However, this Court already found that Defendant was not prejudiced by any failure of counsel to further impeach Burdell. See supra Part III.A.1. Because Defendant would not have been permitted to present this testimony regarding Burdell's alleged out of court statement as substantive evidence, there is no reasonable probability that such testimony would have affected the outcome of Defendant's trial.

Any testimony by Lintzenich or Hoffstot about other trips to St. Louis to purchase heroin would not have been admissible because such evidence is not relevant to Defendant's case. Testimony about whether or not Defendant purchased heroin on other occasions "would have revealed nothing" about whether Defendant purchased heroin of June 17, 2013. See United States v.

Beverly, 913 F.2d 337, 353 (7th Cir. 1990) (holding that, when

defendant's witness had no knowledge of the actual events in

question, his testimony that he never saw the defendant buy or sell

cocaine was properly barred as irrelevant by the district court); see

also United States v. Troutman, 814 F.2d 1428,1454 (10th Cir.

1987) (holding that evidence that the defendant had not extorted

other companies was irrelevant to whether the defendant extorted a

specific company).  "Such proof of an assertion by a negative is

inadmissible." Beverly, 913 F.2d at 353.  Therefore, there is no

reasonable possibility that the testimony of Lintzenich and Hoffstot

would have changed the outcome of Defendant's trial.

> 3. *Defendant does not allege facts that support a finding that he was prejudiced by any error of counsel in failing to prepare the Defendant for his trial testimony.*

Defendant next argues that counsel was ineffective because

counsel did not adequately prepare Defendant for his trial

testimony.  Defendant claims that counsel did not discuss the

substance of Defendant's testimony with Defendant prior to trial

and that counsel did not inform Defendant that he would be subject

to cross-examination.  However, although Defendant alleges that he

was caught off guard by the cross-examination and that he felt

overwhelmed, Defendant does not allege in his motion, nor aver in his affidavit, how his testimony would have changed had he been adequately informed and prepared.  Further, the trial record does not reveal any evidence that Defendant was prejudiced.  In fact, when the Court questioned Defendant about his decision to testify, Defendant explicitly told the Court "I don't have anything to hide...." Trial Tr. (d/e 49) at 287.

The Defendant has not alleged any facts that, if proven at an evidentiary hearing, show that he can satisfy the prejudice element of <u>Strickland</u> for his claims of ineffective assistance of counsel at trial.  Therefore, Defendant's is not entitled to a hearing on these claims.

**B. <u>Defendant Is Not Entitled to an Evidentiary Hearing on His Claim of Ineffectiveness During Plea Negotiations.</u>**

Defendant also argues that his counsel was ineffective by advising Defendant to reject a plea deal offered by the Government that included a sentence of 46 months' imprisonment.  Defendant alleges that his counsel advised him that "if the Government was willing to come off a 10-year sentence, they clearly didn't have a case against him and that he should proceed to trial."  Def. Am.

Mot. for New Trial (d/e 70) at 8.  Defendant alleges that he "followed this advice" in proceeding to trial.  Id.  However, Defendant's allegations are not sufficient to merit an evidentiary hearing on his claim.

The Seventh Circuit has held that, when claiming ineffective assistance based on rejection of a plea agreement, a defendant must bring forth evidence beyond "the allegation contained in his motion" that he was actually offered a plea agreement.  Gallo-Vasquez v. United States, 402 F.3d 793, 798 (7th Cir. 2005). Courts need not "reopen" the case for hearing without "*some* threshold showing of the evidentiary basis" for the claim "beyond mere conclusory allegations."  Martin v. United States, 789 F.3d 709, 707 (7th Cir. 2015) (emphasis in original) (affirming summary dismissal of a § 2255 claim of ineffective assistance of counsel regarding the rejection of a plea when the only evidence of the existence of a plea was the petitioner's "conclusory reference to the 'Government's 30-year plea offer'").

This burden may be "satisfied in any number of ways—a copy of the proposed agreement, correspondence concerning the plea, an affidavit from counsel, a statement as to when or by whom the offer

was made, a detailed account of the material terms of the plea agreement, an entry on the docket setting a date for change of plea, etc." Id.  In this case, the only actual evidence presented by Defendant is his own affidavit, wherein he states that: "the government offered [him] 46 months." See Simpson Aff. Ex. 4 to Def. Am. Mot. for New Trial (d/e 70-4).  Further, the record contains no evidence of a plea offer and the Government has stated that no formal plea offer was ever made to Defendant.  See Gov. Resp. to Court's Text Order (d/e 78).  Therefore, because Defendant offers only bare, conclusory allegations to support the premise that he was offered a plea, Defendant is not entitled to a hearing.

Because this Court finds that Defendant has not sufficiently alleged facts that entitle him to a hearing on any of his claims of ineffective assistance of counsel, Defendant's request for hearing is denied.  Accordingly, Defendants motion for new trial is denied without hearing.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's request for a hearing on his Renewed Amended Motion for New Trial is DENIED.

Further, Defendant's Renewed Amended Motion for New Trial (d/e 70) is DENIED without hearing.

IT IS SO ORDERED.

ENTER: June 16, 2016

FOR THE COURT:

<u>s/ Sue E. Myerscough</u>

SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE